# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ERAN BEST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 09 C 7749 |
| | ) |
| STACEY MALEC, TIMOTHY BOOGERD, | ) |
| CITY OF NAPERVILLE, A DAY WITH, INC., | ) |
| GOOD LUCK NAT, INC. d/b/a THE GREIF | ) |
| COMPANY, and A&E TELEVISION | ) |
| NETWORKS, LLC, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Eran Best has filed a lawsuit against the City of Naperville, two Naperville police officers, and several television production companies arising from her appearance on the reality television show *Female Forces*. Best alleges that she was depicted on the show without her consent. She raises a federal claim under 42 U.S.C. § 1983 and several state law claims arising out of her arrest and her depiction on the television show. Defendants have moved to dismiss several of the state law claims on various grounds. For the reasons stated below, the Court grants the motion in part and denies it in part.

## Background

When considering a motion to dismiss a complaint, the Court accepts the facts

1

stated in the complaint as true and draws reasonable inferences in favor of the plaintiff. *Newell Operating Co. v. Int'l Union of United Auto., Aerospace, and Agr. Implement Workers of Am.*, 538 F.3d 583, 587 (7th Cir. 2008).

The Court takes the following facts from the allegations in Best's complaint. Defendants A Day With, Inc. (ADW) and Good Luck Nat, Inc. d/b/a The Greif Company (Greif) produce a television show called *Female Forces* that airs on the Biography Channel. The Biography channel is owned by defendant A&E Television Networks, LLC (A&E). *Female Forces* is an unscripted "reality" television series that follows several female Naperville police officers as they perform their duties and interact with members of the public. Before a member of the public can appear on the show, the producers must obtain a signed release in which the person consents to being televised.

The City of Naperville participates in the *Female Forces* program pursuant to a city resolution authorizing it to enter into a contract with ADW. The contract with ADW gives the Naperville Police Department the right to review a rough cut of each episode of the show and to demand removal of material from the episode if it chooses. The department must make such a request within five days of receipt of the rough cut; failure to reply within the five-day period is deemed approval of the rough cut.

On February 24, 2008, Best was driving in Naperville when she was pulled over by Boogerd because the license plate on her car had an expired sticker. Boogerd took Best's driver's license and registration and returned to his vehicle while Best waited in her car. From his car, Boogerd requested that Malec, a female officer who was being

2

accompanied that day by a *Female Forces* camera crew, join him at the scene. The wait for Malec and the *Female Forces* crew caused a thirty minute delay in the processing of Best's traffic stop.

Once Malec and the camera crew arrived on the scene, Boogerd and Malec approached Best's car. They asked her to get out of the car. When Best asked what was going on, Malec identified herself as a police officer and stated that the television crew was filming a documentary about her. Boogerd and Malec performed a field sobriety test on Best. Best stated that she had consumed one beer three hours earlier, and she passed the field sobriety test. Boogerd and Malec then informed Best that she was driving on a suspended driver's license, and they placed her under arrest. They handcuffed Best and placed her in the back of Boogerd's squad car. Boogerd and Malec then proceeded to search Best's car. After the search was completed, Boogerd transported Best to the Naperville police station while Malec waited at the scene for a tow truck to arrive to impound Best's car.

While Boogerd was transporting Best to the police station, he informed her that if she did not sign a written consent form, the footage of her arrest would not be shown on the *Female Forces* tv show. Once she arrived at the Naperville police station, a *Female Forces* producer approached Best and urged her to sign a written consent form to allow the footage of her arrest to be used on the television show. Best repeatedly refused, and she never signed a consent form.

Despite the fact that Best never signed a consent form, footage of her arrest was broadcast in an episode of *Female Forces*. The segment includes footage of the field sobriety test and Best's arrest, including the moment when she is placed in handcuffs.

Best's face is visible, and her voice is audible throughout this footage.

The segment also includes scenes in which Best is not on camera. One scene shows Boogerd and Malec searching Best's car while bantering about her expensive taste. Malec says that Best likes Coach purses, bags, and shoes, and Boogerd comments that Best was driving a Jaguar. In another scene, Malec is shown in her squad car driving to the scene, speaking directly to the camera. At one point, as Malec is speaking to the camera, the camera focuses on a dashboard computer, on which information about Best – including her date of birth, height, weight, driver's license number, and brief descriptions of previous arrests and traffic stops, including at least one that took place when she was a minor – is displayed.[1] After the scene showing Best's arrest, the camera again films Malec in her squad car, and she says, "Do I feel sorry for [Best]? No. Pretty little blond girl, 25 years old, driving a Jaguar - yeah, that's Naperville."

The *Female Forces* episode featuring Best has aired more than once. Best has received phone calls from friends and acquaintances who have seen the segment. She alleges that the broadcasting and rebroadcasting of the episode has caused her substantial humiliation and emotional distress. In her complaint, Best asserts six claims. In count 1, she alleges that defendants conspired to and did violate her federal constitutional right to privacy when they "staged, sensationalized, and/or enhanced" her arrest and broadcast it without her consent. In count 2, she alleges that ADW, Greif,

---

[1] At the top of the screen, at least at the top of the screen as the Court sees it, it appears that an address, or at least part of an address, is shown. The Court cannot determine whether a full address could be seen by any viewers of the actual show.

4

and A&E (collectively, the "media defendants") used her identity for commercial purposes without her consent, in violation of the Illinois Right of Publicity Act, 765 ILCS 1075/30. In count 3, she alleges that all the defendants invaded her privacy under Illinois law by publicly disclosing private facts about her. In count 4, she raises a claim of intentional infliction of emotional distress under Illinois law. In count 5, she alleges that the city of Naperville violated the Illinois Personal Information Protection Act (PIPA) when it allowed the computer screen showing her personal information to be broadcast on the *Female Forces* program. Count 6 also arises out of the showing of the computer screen; Best alleges that the defendants violated the federal Driver's Privacy Protection Act, 18 U.S.C. § 2722(a), when they disclosed her driver's license number in conjunction with her name.

Defendants have moved to dismiss counts 2, 3, 4, and 5 pursuant to Federal Rule of Civil Procedure 12(b)(6). They have also moved to compel Best to state the precise date on which the episode in question first aired and to strike the portions of counts 3, 4, and 5 requesting punitive damages and attorney's fees. For the reasons stated below, the Court grants the motion in part and denies it in part.

## Discussion

Federal Rule of Civil Procedure 8(a) "requires that a complaint contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quoting Fed R. Civ. P. 8(a)). The statement must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v.*

5

*Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although the plaintiff is not required to give detailed factual allegations, she must allege facts that "raise a right to relief above the speculative level." *Id.*

### A.     Illinois Right of Publicity Act (count 2)

Best alleges that the media defendants violated the Illinois Right of Publicity Act (IRPA), 765 ILCS 1075/30, which prohibits use of an individual's identity for commercial purposes without written consent. Best contends that broadcasting the footage of her arrest in a *Female Forces* episode constitutes a use of her identity for commercial purposes.

The Illinois statute defines a commercial purpose as "the public use or holding out of an individual's identity (I) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." 765 ILCS 1075/5. Best alleges that the defendants used her identity in connection with a product, namely a television show. The *Female Forces* show is a for-profit product, broadcast on a network with commercial advertisements. People pay for television service, including via subscriptions to cable networks such as the Biography Channel. It appears that broadcasting the footage concerning Best on *Female Forces* satisfies the "commercial purpose" requirement under IRPA.

The defendants argue that *Female Forces* is exempt under IRPA because it is a television broadcast, and therefore Best's claim fails. In support, defendants cite a decision in which a court in this district held that a cartoon depiction of a person on a

television show was exempt from IRPA under 735 ILCS 1075/35(b)(1). *Collier v. Murphy*, No. 02 C 2121, 2003 WL 1606637 (N.D. Ill. Mar. 26, 2003). Section 35 of IRPA provides several exemptions from the statutory prohibition, including for works of art, news programs, and sports broadcasts. The court in *Collier* determined that the cartoon representation of the plaintiff in that case fell under section 35(b)(1), which exempts from IRPA "use of an individual's identity in an attempt to portray, describe, or impersonate that individual in a live performance, a single and original work of fine art, play book, article, musical work, film, radio, television, or other audio, visual, or audio-visual work." 765 ILCS 1075/35(b)(1). The footage of Best's arrest used in *Female Forces*, by contrast, was not "an attempt to portray, describe, or impersonate" her in a work of art; it was actual video of her arrest. Therefore, the exemption contained in section 35(b)(1) does not apply, and *Collier* appears to be inapposite.

Defendants also argue that IRPA should not apply because "the Episode uses Plaintiff's identity in connection with legitimate coverage of public activities." Defs.' Mem. in Support of Mot. to Dismiss at 6. Defendants make reference to the First Amendment protections granted to books and newspapers, *id.* at 5, and they cite Supreme Court cases (and the Second Restatement of Torts) that discuss First Amendment protections for newspapers. By these references, defendants may be suggesting that the *Female Forces* program is a news or public affairs broadcast and thus exempt from IRPA under section 35(b)(2), which exempts "use of an individual's identity for non-commercial purposes, including any news, public affairs, or sports broadcast or account, or any political campaign." 765 ILCS 1075/35(b)(2). They may

also be attempting to argue that the First Amendment precludes the application if IRPA to programs like *Female Forces*. Neither of these arguments are squarely presented in the defendants' brief, however, and the Court declines to grant a motion to dismiss on an argument that defendants have failed to develop fully. The Court therefore denies defendants' motion to dismiss count 2.

**B.     Publication of private facts (count 3)**

Best's complaint also includes a claim for invasion of privacy by publication of private facts, a tort under Illinois common law. Best alleges that the *Female Forces* segment about her arrest includes a shot of a computer screen on the dashboard of Malec's patrol car which displays personal details about her, including her name, age, height, weight, driver's license number, and information about previous traffic stops and arrests – including at least one that appears to have taken place when she was a minor. This shot of the computer screen, Best argues, constitutes publication of private facts.

In Illinois, to succeed on a claim for public disclosure of private facts, a plaintiff must prove that: "(1) publicity was given to the disclosure of private facts; (2) the facts were private and not public facts; and (3) the matter made public would be highly offensive to a reasonable person." *Johnson v. K-Mart Corp.*, 311 Ill. App. 3d 573, 579, 723 N.E.2d 1192, 1197 (2000).

Defendants have moved to dismiss this claim on the ground that the facts visible on the monitor in Malec's patrol car are not private facts and that nothing revealed on the screen would be highly offensive to a reasonable person. In ruling on a motion to dismiss, the Court must take the facts alleged in the complaint as true and draw all

8

reasonable inferences in favor of the non-moving party. *Newell Operating Co.,* 538 F.3d at 587. Best has alleged that the publication of this information was highly offensive and caused her great distress. Given the nature of at least some of the information, and given the risk of identity theft that is presented by the exposure of such information in association with a person's name, the Court concludes that it is reasonable to infer that disclosure of such information would be highly offensive to a reasonable person. The Court is satisfied that Best's complaint satisfies this element of the test.

Furthermore, though defendants argue that the facts disclosed were not private facts, the Court is not entirely persuaded. Illinois cases addressing the question of publication of private facts have held that private facts are "intimate personal facts," such as health issues and sexual relationships. *Johnson*, 311 Ill. App. 3d at 578-79, 753 N.E.2d at 1196. Matters of public record such as a person's name, address, date of birth, and fact of marriage, have been held not to be private facts. *Geisberger v. Willuhn*, 72 Ill. App. 3d 435, 439, 390 N.E.2d 945, 948 (1979). Other cases have limited the definition of private facts to those facts that the Illinois legislature has expressly stated are private or those that are "facially revealing, compromising, or embarrassing." *Busse v. Motorola*, 351 Ill. App. 3d 67, 73, 813 N.E.2d 1013, 1018 (2004).

The defendants argue that all of the facts Best alleges were revealed on the computer screen are, in fact, public facts, and therefore count 3 should be dismissed. Defendant notes, correctly, that the fact of a prior arrest or traffic stop is not a private

fact.  *Oden v. Cahill*, 79 Ill. App. 3d 768, 771, 398 N.E.2d 1061, 1063 (1979).  From the dates visible on the computer screen, however, it appears that at least one of the prior arrests shown occurred when Best was a minor, which in the Court's view raises additional privacy implications.  The rights of minors are often different from those that apply to adults.[2]  The defendants have offered no case that stands for the proposition that record of an arrest as a minor (as opposed to an adult) should be treated as a public fact.

Defendants also argue that courts have held that facts such as a person's name and age are matters of public record, and as such are not private facts.  *Geisberger*, 72 Ill App. 3d at 439, 390 N.E.2d at 948.  However, taken in combination, the facts about Best's name, age, height, weight and driver's license number could arguably be classified as "facially compromising," particularly given the identity theft risks that disclosure of such information presents.   *Busse,* 351 Ill. App. 3d at 73, 813 N.E.2d at 1018.  The Court therefore concludes, drawing reasonable inferences in Best's favor, that she has adequately alleged facts sufficient to sustain a claim of invasion of privacy by publication of public facts and therefore declines to dismiss count 3.[3]

## C. Intentional infliction of emotional distress (count 4)

---

[2] For example, although court records are typically public, under Illinois law, juvenile court records are treated as confidential, 705 ILCS 405/1-8.

[3] The Court notes that based on its viewing of the *Female Forces* episode in question (which defendants included with their motion to dismiss and to which plaintiff did not object), it is not clear that Best's name is visible from the screen on the dashboard of Malec's patrol car.  Taking the well-pleaded allegations in Best's complaint as true, however, the Court accepts the allegation that her name is visible on the screen for purposes of ruling on the motion to dismiss.

Defendants have moved to dismiss Best's claim for intentional infliction of emotional distress. Under Illinois law, to succeed on a claim of intentional infliction of emotional distress, a plaintiff must prove that defendant's conduct was so extreme and outrageous as to exceed all possible bounds of decency; it resulted in emotional distress so severe that no reasonable person could be expected to endure it; and defendants intended to inflict this distress or were substantially certain that their conduct would result in severe distress. *Berkos v. Nat'l Broad. Co.*, 161 Ill. App. 3d 476, 496-97, 515 N.E.2d 668, 680 (1987).

Best's complaint alleges that Malec and Boogerd engaged in extreme and outrageous conduct when they made what she characterizes as mocking comments about her Coach products, her Jaguar, and the fact that they interrupted her trip to the grocery store when they pulled her over. She alleges that media defendants' decision to televise the footage of her arrest without her consent, after she had been assured that it would not appear on the show, and Naperville's failure to object to the use of that footage, was likewise extreme and outrageous. The complaint alleges that Best "suffered and continues to suffer severe embarrassment, humiliation and emotional distress as a result of these actions." Compl. ¶ 150.

Defendants assert that Best has "fail[ed] to sufficiently allege a cause of action for intentional infliction of emotional distress." Defs.' Mem. in Support of Mot. to Dismiss at 10. They argue that the conduct Best has identified is not extreme and outrageous. Whether conduct is extreme and outrageous is "determined by the facts and the circumstances of each case, and is evaluated on an objective standard." *Tuite v. Corbitt*, 358 Ill. App. 3d 889, 899, 830 N.E.2d 779, 789 (2005). "Mere insults,

11

indignities, threats, annoyances, petty oppressions, or trivialities" do not qualify as extreme and outrageous conduct. *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 20-21, 607 N.E.2d 201, 211 (1992). Courts have granted motions to dismiss claims of intentional infliction of emotional distress when the court concludes that the conduct plaintiff alleges fails to rise to the level of "extreme and outrageous." *See*, *e.g.*, *Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 438 (7th Cir. 2009) (affirming dismissal of intentional infliction of emotional distress claim where conduct alleged by plaintiff did not rise to the level of extreme and outrageous).

If Best's claim were based solely on the fact that Malec and Boogerd made a few remarks that amount to mocking or teasing about Best's perceived wealth or fancy taste, the defendants might be correct that she was complaining about "mere insults [and] indignities," and motion to dismiss the intentional infliction of emotional distress claim might fare better. *Id.* As it stands, however, Best's complaint alleges not only that the comments were made but that the defendants aired footage including those mocking comments without her consent, knowing that she objected and ignoring the assurances that they had given her that it would not be televised. Compl. ¶ 148. This, in the Court's view, elevates this claim above the level of "mere insults," at least for purposes of a motion to dismiss.

Best's complaint also sufficiently alleges that broadcasting the footage of her arrest caused her substantial emotional distress and that defendants knew or should have known that televising the footage over her objection would cause that distress. Compl. ¶¶ 149-50. The Court concludes that Best's complaint, taking all facts as true and drawing all inferences in her favor, alleges facts sufficient to establish the elements

of a claim of intentional infliction of emotional distress. The Court therefore declines to dismiss count 4.

**D.      Personal information protection act (count 5)**

Defendants have also moved to dismiss count 5 of Best's complaint, in which she asserts a claim under the Illinois Personal Information Protection Act (PIPA), 815 ILCS 530/12. The PIPA provides that "[a]ny State agency that collects personal information concerning an Illinois resident shall notify the resident at no charge that there has been a breach of the security of the system data or written material following discovery or notification of the breach." *Id.* § 12(a).

The PIPA itself does not provide for a private cause of action to seek damages for violations. It does, however, provide that "a violation of this Act constitutes an unlawful practice under the Consumer Fraud and Deceptive Business Practices Act." *Id.* § 15. The Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) provides that "any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. . ." 815 ILCS 505/10/a. The ICFA defines "person" as "any natural person or his legal representative, partnership, corporation (domestic and foreign), company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestui que trust thereof." 815 ILCS 505/1(c). The Illinois Supreme Court has held that based on this definition of "person," a municipality cannot be sued under the ICFA. *Board of Educ. of City of Chicago v. A, C and S, Inc.*, 131 Ill. 2d 428, 468, 546 N.E.2d 580, 599 (1989).

The defendants have moved to dismiss on the ground that Naperville, the only defendant named in count 5, is not a "person" as defined by the ICFA and therefore cannot be sued directly for a violation of the PIPA. Plaintiff counters that the PIPA includes "government agencies" in its list of entities that may qualify as "data collectors," and thus when considering an ICFA claim that arises under the PIPA, the definition of "person" should be expanded to include municipalities. Pl.'s Mem in Opp. to Mot. to Dismiss at 13.

Plaintiffs argue that "by its own terms, the PIPA allows actions against government agencies such as Naperville." *Id.* The Court disagrees. Under the PIPA's express terms, governmental entities such as Naperville are *subject* to the law, which requires data collectors to notify residents whose personal information has been compromised as a result of a security breach. Naperville is clearly required to notify any affected parties if any data it collects and maintains is improperly released after a security breach. That does not, however, provide an individual a private right of action for damages against a governmental entity in the event of such a breach. The only provision for a private right of action under the PIPA is pursuant to the ICFA. Actions for damages under the ICFA may be brought only against "persons" as defined by the statute, which does not include municipalities. The PIPA, in its reference to the ICFA, does not include any language suggesting that the definition of "person" under the ICFA should be expanded when considering claims that arise under the PIPA. The plain language of the statutes, read together, compels the conclusion that although municipalities are subject to the PIPA, they may not be sued for damages via the right of action provided through the ICFA. The Court therefore grants defendants' motion to

dismiss count 5 of the complaint.

**E.     Other motions**

Defendants have also asked the Court to compel Best to provide a more definite statement of when the *Female Forces* episode in question. Defendants say that they believe some of Best's claims may be barred by the statute of limitations but are unable to make that determination without knowing the original airing date of the episode. The Court sees no basis to force a plaintiff to plead something that federal pleading rules do not require just to establish a possible affirmative defense. Defendants likely have this information themselves, and if not, they may obtain it via the discovery process.

Finally, defendants have moved to strike Best's requests for attorney's fees and (as to some defendants) punitive damages on counts 3, 4, and 5, arguing that such awards are not available under Illinois law. The Court has already dismissed count 5, and it agrees that there is no statute or legal doctrine providing for an attorney's fee award as to counts 3 and 4. The Court sees no need, however, to address the availability of punitive damages on those claims at this time and thus declines that aspect of the request as premature.

**Conclusion**

For the foregoing reasons, the Court grants defendants' motion to dismiss and/or strike [# 13] as to count 5 and the requests for attorney's fees in counts 3 and 4 but otherwise denies the motion. Defendants are directed to answer all remaining claims

by June 25, 2010.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 11, 2010